KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* MIXON-

McCLINTOCK COMPANY.

## Opinion delivered February 17, 1913.

1. CORPORATIONS—PROOF OF CORPORATE EXISTENCE.—Under section 845 of Kirby's Digest, the certificate of incorporation is expressly made admissible in all courts of the State, and is *prima facie* evidence of the due incorporation of the company to which it is issued. (Page 56.)

2. IMPROVEMENT DISTRICT—RIGHT TO SUE—ORGANIZATION—PRESUMPTION. —Where the statute organizing a road improvement district gives it the right to sue and be sued, and there is testimony that the district has been organized, has issued bonds and borrowed money, it will be presumed for the purpose of bringing suit, that it has been properly organized. (Page 56.)

3. CARRIERS—RIGHT OF CONSIGNEE TO SUE.—Where a carrier receives a shipment of mules in an interstate shipment, and contracts to deliver them to a certain consignee, the consignee may bring suit against the carrier for damages to the stock, even though the consignor and consignee are different parties. (Page 57.)

4. CARRIERS—SAME.—When a carrier contracts to deliver a shipment to a certain named consignee, it can not complain that the consignee is without authority to bring suit for damages thereto. (Page 56.)

5. PARTIES—JUDGMENT.—When two companies have a right of action against defendant for damage done to stock in transit, it is no defense if the parties are not properly joined, since defendant can be compelled to pay the judgment but once. (Page 57.)

6. CARRIERS—INTERSTATE COMMERCE—LIABILITY OF INITIAL CARRIER.— The initial carrier in an interstate shipment, having issued its bill of lading for the property shipped, is liable to the lawful holder of the bill of lading for any loss, damage or injury to such property, caused by it or any connecting carrier, to which the property was delivered, and over whose lines it passed in reaching its destination. (Page 57.)

7. CARRIERS—LIABILITY OF INITIAL CARRIER—BURDEN OF PROOF.—When defendant, the initial carrier, received a shipment of mules at Kansas City for delivery at Marianna, Ark., and in an action for damages to the same, it interposes the defense that the mules injured each other by their own viciousness, the burden is on defendant to prove that defense, by a preponderance of the evidence, and failing to do so, is liable for the damages irrespective of whether the injury occurred on its line or not. *Carmack Amendment to Interstate Commerce Act,* 34 Statutes at large (U. S.) 584. (Page 57.)

8. CARRIERS—RESTRICTED LIABILITY.—The provisions of the Hepburn interstate commerce act, forbidding exemptions from liability, are not violated by a contract, limiting the amount of the recovery to $100 for the loss or injury to each animal shipped, in consideration of a lower freight rate, where such limitation is expressed in a contract for an interstate shipment of mules. (*Adams Express Co.* v. *Croninger,* 226 U. S. 491). (Page 58.)

9. APPEAL AND ERROR—EXCESSIVE DAMAGES—REMITTITUR.—Where, from the undisputed testimony, the jury could not have found damages against defendant for loss of a mule more than $250 and defendant being liable for only $100 of that amount, the judgment will be affirmed upon the entering a remittitur of $150, the error thereby being cured. (Page 58.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellees brought this suit against the appellant railway company for damages for injury to twenty-four head of mules, shipped from Kansas City, in Missouri,

to Marianna, Arkansas. The mules were purchased of Cottingham Bros., in Kansas City, by the Mixon-McClintock Company, of Marianna, Arkansas, for Road Improvement District No. 1, of Lee County, and delivered to the Kansas City Southern Railway Company for shipment to the point of destination. It was alleged that appellant received the mules and undertook to deliver them and issued its bill of lading therefor to the Mixon-McClintock Company, of Marianna. That the mules were in good condition, sound and healthy at the time they were delivered to it for transportation, but that they failed and neglected to deliver them to appellees at Marianna, Arkansas, in good condition. That the same on arrival at Marianna were greatly injured and bruised and that some of them died soon after reaching the point of destination on account of the injuries received; that eighteen of them were injured to a greater or less extent, many having their legs broken, others having cuts and gashes on their bodies, heads and shoulders and that appellees were unable to use said stock upon their arrival and all the injury and damage to same occurred and was caused while the mules were in transit from Kansas City, Missouri, to Marianna, Arkansas. A bill of lading and contract of shipment was exhibited with the complaint and it was further alleged that notice of the injury to the stock was given to the agent of the delivering carrier at the place of destination within the time required by the bill. That appellees have been damaged in the sum of $1,900, for which amount judgment was prayed. In an amended complaint, the injuries to the animals were specified.

The answer denied that the Mixon-McClintock Company and Road District No. 1 were corporations and that they had authority to bring the suit. Denied all the allegations of the complaint, except that it was a common carrier. Alleged that it received the mules for transportation only over its own lines from Kansas City to Neosho, Missouri, and there delivered the same to the Missouri & North Arkansas Railroad Company, in good

order and condition. Denied that notice of the injury to the stock was given to the agent for the carrier at the point of delivery and alleged that the Missouri & North Arkansas Railroad Company and the St. Louis, Iron Mountain & Southern Railway Company, the delivering carriers, were necessary parties and moved the court to have them made parties defendants. Alleged that the injury to the animals was caused by the negligence and fault of the plaintiff and set out the contract of shipment and that it contained a stipulation that the parties had agreed, in consideration of the freight rate made, that the animals, if injured or destroyed, should be valued at the sum of $100 each. It further alleged that the appellees had agreed that they would at their own cost and expense look after the condition of the car, as well as the condition of the stock in the car; that they overloaded the car and caused the animals to be injured through the negligence of the appellees; that the shipper agreed to assume all risk of injury or loss to said stock because of any defect in the car, or the stock being wild or unruly and maiming each other; denied that any notice of the injury to the animals was given before removing them from the station at the point of delivery.

R. L. Mixon testified that he was a member of the Mixon-McClintock Company and that same was duly incorporated .and introduced in evidence the certificate of incorporation issued by the Secretary of State upon the filing of its articles of incorporation in that office. The special act of the Legislature, authorizing the creation of Road District No. 1, of Lee County, was also offered in testimony. Mixon testified that he was one of the commissioners of the Road Improvement District and "after we issued bonds and prepared to work, it became necessary to buy some stock—mules. He then took a man to Kansas City and bought twenty-four head of mules from the Cottingham Bros. there, and the contract of shipment was made between the Cottingham Bros. and the Kansas City Southern Railway Company, and the mules mentioned in the contract were consigned to the Mixon-

McClintock Company, at Marianna, Arkansas. The
mules were large and young and averaged in weight be-
tween 2,000 and 2,800 pounds per pair and were of the
value of $250 each; that they were delivered to the rail-
road company on August 10, 1911, and received at Mari-
anna six days later, twenty-two of them came in a differ-
ent car than the one in which they were loaded, and two
in a car by themselves, arriving two days after the first
shipment arrived. The parties who examined the mules
found only one of them in condition to work upon arrival;
some had enlarged hocks, making them stiff and lame.
Some were skinned on the front part of the hind legs,
from the ankles up. One had a cut on the hip and one a
troublesome gash on the shoulder. This one died a week
or ten days after arrival at Marianna. One of the in-
jured mules was sold for $150, and Mr. Mixon, after the
injury to each of the mules was described before the
jury from a written memorandum, which was made in
his presence, stated that he could not answer as to the
damage done to each individual mule, and was permitted
to state that he figured the difference in value of the
entire lot at $1,700. That it was a reasonable and fair
amount of damages for injuries to the mules. That
they were paid for by draft from the Mixon-McClintock
Company, but that they were really bought for the Road
Improvement District and considered by the company to
belong to the district, that they were purchased for ac-
commodation by the Mixon-McClintock Company, the
road district being without credit. He said further,
"We did not sell them to the improvement district at all.
We bought these mules for the Improvement District
and the Improvement District paid exactly what we paid
for them. The Improvement District is the party to
whom the amount of damages for which the suit is
brought is going. The Mixon-McClintock Company was
simply acting for the accommodation of the improvement
district. The Improvement District had no rating and
the Mixon-McClintock Company did, and although the
mules were consigned to the Mixon-McClintock Company,

they were never bought for that company but were bought for the Road Improvement District. The Mixon-McClintock Company was not out a cent on the mules. They were simply drawn into it by paying for the mules and delivering them to the Road Improvement District. The Mixon-McClintock Company has not a penny interest in the lawsuit. If anything is recovered, that recovery belongs to the Road Improvement District and not to the Mixon-McClintock Company.''

A motion was made by appellant after this testimony to strike from the case the Mixon-McClintock Company and also the point was insisted upon that the proof did not show that the Road Improvement District would be authorized to bring the suit.

There was other testimony introduced relating to the conduct of the shipment, the unloading and feeding the mules at different places and the changing of the animals into the car in which they arrived at their destination from the car in which they had been shipped, the reloading of them into two other cars before arrival at destination. This proof tended to show that the mules were in good condition when they arrived at Eureka Springs, Arkansas, after they had been received by the Missouri & North Arkansas Railroad Company. There was also some proof tending to show that they were biting and kicking and fighting in the car at some places along the route and that they were not roughly handled by any of the roads over which they passed. The testimony showed the mules were injured, and those expert in such matters stated, judging from an examination of the injuries received, that they were not inflicted by the animals themselves.

The court instructed the jury, and refused appellant's requested instruction No. 4, as follows: ''The jury are instructed that as to the mule which died, if the jury find for the plaintiff, they can only find in the sum of $100.''

The jury returned a verdict of $1,700 and from the

judgment thereon the railroad company prosecutes this appeal.

*Read & McDonough,* for appellant.

1.   The plaintiffs herein have no right to bring and maintain this suit.   Corporations have no power to act as agents of other parties in matters of this kind unless so authorized by their articles of incorporation.   Thompson on Corporations, § 2156.

A suit must be brought in the name of the real party in interest.   2 Crawford's Dig., "Parties," 678; 80 Ark. 167; 91 Ark. 368; 79 Ark. 414; 76 Ark. 558; 65 Ark. 27.

2.   The Road Improvement District can not recover for want of sufficient proof to show that it is duly organized.   It could only sue or be sued after the county court has made the necessary orders provided for by the act. Special Acts, 1911, p. 321; Hutchinson on Carriers, § 1314, and cases cited.

3.   If there is any presumption that the injury was done through the negligence of appellant, that presumption has been rebutted by the evidence of all the trainmen, which, being fair and reasonable, can not, or should not, be arbitrarily disregarded.   66 Ark. 439; 67 Ark. 514.

4.   The verdict is excessive.   It was clearly erroneous to permit the damages to be estimated in gross. 71 Ark. 302; 68 Ark. 218.   See also 117 Ill. (Tex.), 1078.

5.   The jury ought not to have been permitted to speculate as to the cause of the damages.   Placing the most favorable construction upon the evidence, it is purely a matter of conjecture as to whether the injury of the mules was due to negligence of the defendant or to the viciousness of the mules themselves.

6.   The burden of proof was upon the plaintiff to show that the injuries were due to the manner of handling, and not to the propensity of the animals, and the court should so have charged the jury.   43 Pa. Super. Ct. 276; 131 S. W. 118.   A carrier of live stock is not bound to exercise the highest degree of care, but only reasonable care.   133 N. W. 746; 109 Pac. 713.   And it is

not liable where the damage results from the inherent nature or vice of the animals. 104 S. W. 186; 52 So. 918; 72 S. E. 1042; 137 S. W. 611; 134 S. W. 917; 78 Atl. 1085. The shipper assumes the risk of injuries due to the viciousness of the animals. 119 S. W. 505; 120 N. W. 453; 115 S. W. 184; 40 So. 557. ·

*R. M. Mann, F. M. Burke, S. H. Mann* and *J. W. Morrow,* for appellee.

1. As evidence of the fact that Mixon-McClintock Company was a corporation, plaintiff introduced the certificate of the Secretary of State. That was sufficient to establish the fact, and it was not necessary to introduce the articles of incorporation. Kirby's Dig. § 845. On the question of its right to sue, the fact that it was the consignee of the shipment, and the defendant contracted to deliver the mules to it at Marianna, conferred a sufficient interest to authorize it to sue. 141 S. W. (Ark.) 939; 58 Ark. 487. Moreover, appellant is in no position to urge want of capacity in appellee. 10 Cyc. 245 and cases cited; 47 Ark. 269; 12 Ark. 769.

2. Under the circumstances of this case, where it is shown that the animals were in first-class condition when received by the carrier, and the contract of shipment shows on its face, "no one in charge," the burden was upon the carrier to show that the injury was not caused by its own negligence. Elliott on Railroads, § 1548-A.

A carrier is liable for injuries caused to live stock by its own negligence, notwithstanding the animals, owing to their natural propensities, may have contributed thereto. Elliott on Railroads, § 1548.

4. The measure of damages is the difference between the value of the animals before the injury and their value after the injury. 50 Ark. 169, 179.

KIRBY, J., (after stating the facts). It is insisted, first, that the appellees have no authority or right to bring this suit and that the Mixon-McClintock Company was not a proper party, having no interest in the result thereof.

The answer denied the corporate existence of the Mixon-McClintock Company and also of the road improvement district and there was introduced in evidence the certificate of the incorporation of the Mixon-McClintock Company, issued by the Secretary of State upon the filing of its articles of incorporation in that office, as required by law, and also the special act of the Legislature, authorizing the organization of the road improvement district and the statement of one of its commissioners that after they had issued the bonds and borrowed the money it became necessary to buy some mules to carry on the work and that the mules were purchased by the Mixon-McClintock Company for it.

The certificate of incorporation is in proper form and is expressly made admissible in all the courts of the State, and is *prima facie* evidence of the due incorporation of the company to which it is issued. Section 845, Kirby's Digest.

The Road Improvement District is expressly authorized by the statute under which it was created to sue and be sued, and the testimony, showing that it had been organized, issued bonds and borrowed money, the presumption should be indulged that it was properly organized, even if appellant were in a position to raise the question.

The appellant received the mules for shipment in Kansas City, and issued its contract and bill of lading therefor, binding itself to deliver them to the Mixon-McClintock Company, at Marianna, Arkansas, and under such circumstances it would not be heard to complain that the consignee to whom it expressly agreed to deliver the stock was without authority to bring suit for the damage thereto. *St. Louis, I. M. & S. Ry. Co.* v. *Cumbie,* 101 Ark. 179, 141 S. W. 939; *Cantwell* v. *Pacific Express Co.,* 58 Ark. 487.

It is true, the contract of shipment in this case was made with the Cottingham Bros., but the railroad's contract to deliver was to the Mixon-McClintock Company, and it will not be heard to deny the existence of the cor-

poration bringing suit upon such contract for the failure of its performance by the carrier.  10 Cyc. 245.

The testimony shows that each and both companies were authorized to sue, and if they were not properly joined it was no concern of appellant's, since it can not be compelled to pay the judgment but once, and whichever had the right to recover is bound thereby.

The testimony shows that the mules were delivered to appellant carrier in good condition and that their market value was $250 each.   It also shows in detail the injuries to each animal upon arrival at the point of destination and the witness's statement of the amount of damages of $1,700 to all of them because of the injuries.   It is also undisputed that one of the mules died from the injuries received in transportation and that another was sold for only $150 because of such injuries.  The shipment was an interstate one and the initial carrier receiving the property for transportation was required to issue its bill of lading therefor and it became liable to the lawful holder of such bill of lading for any loss, damage or injury to such property, caused by it or any connecting carrier to which it was delivered and over whose line it passed in reaching its destination.

According to the Carmack amendment to the Interstate Commerce Act, 20th section, of June 29, 1906, 34 U. S. Statutes at Large, 584, the common law liability of the carrier for damages for injury to freight in transportation, was defined by this court in *St. L., I. M. & S. R. R. Co.* v. *Pape,* 100 Ark. 279, where it was held that the carrier is liable for all injuries and losses to the property shipped in transportation, except certain ones, arising from the act of God, the public enemy, or of public authority of the shipper, or from the inherent nature of the property shipped and in cases where it claims exemption from liability on account of either of these exceptions that the burden of proof rests upon it to show that the injury resulted therefrom.   See also *Adams Express Co.* v. *Croninger,* 226 U. S. 491.

The property having been received at Kansas City

in good condition and delivered at the point of destination in an injured and damaged condition and appellant having failed to show by a preponderance of the testimony, as the jury found, that the damage and injury were caused by the inherent viciousness of the animals themselves, it was bound to the payment of the damages arising from the injury to the mules in transportation, without regard to whether the injury occurred upon the line of the receiving carrier or not.

The majority of the court are of the opinion that the abstract of the testimony in the brief is sufficient to warrant the court in considering the clause in the bill of lading limiting the liability of the carrier to $100 in case of loss or injury, for each of the animals shipped, but the consideration of it must be limited to the clause for the loss of the mule that died only, since no question was made in the trial court upon it as to the damage to any of the others. The limited liability bill of lading shows that the freight charge made was based upon a valuation of not to exceed $100 for each animal and although our decisions before the construction of such a clause, after the passage of the Carmack amendment to the Hepburn Act, by the Supreme Court of the United States, held it invalid, as an attempt to restrict and limit the liability of the carrier in case of an injury caused by it to live stock in transportation and prohibited by the terms of said amendment to the Hepburn Act, we now hold in conformity with the opinion of the Supreme Court of the United States construing it *(Adams Express Co.* v. *Croninger, supra)*, that the provisions of said act forbidding exemptions from liability imposed by it are not violated by the contract expressly limiting the amount of recovery to $100 for the loss or injury to each animal shipped, in accordance with the terms of the contract for shipment.

The court erred therefore in not giving appellant's requested instruction No. 3. It is not such an error, however, that can not be corrected by remittitur, since from the undisputed testimony the jury could not have found that the damage to the animal that died was more than

$250, and appellant is liable for $100 of that amount, and if appellees will enter a remittitur within fifteen days for $150, the judgment will be affirmed, otherwise it will be reversed and the cause remanded for a new trial.