(No. 16723.—Reversed and remanded.)
THE ALTON IRON AND METAL COMPANY, Appellee, *vs.* THE WABASH RAILWAY COMPANY, Appellant.

*Opinion filed December 21, 1927—Rehearing denied Feb. 8, 1928.*

1. CARRIERS—*rights and liabilities in interstate shipments are governed by Federal statutes and decisions.* The rights and liabilities of parties in interstate shipments are governed by Federal statutes and the decisions of Federal courts, in so far as such statutes and decisions are applicable to the facts in evidence.

2. SAME—*neither the Carmack amendment nor the Federal Bills of Lading act affects common law liability of connecting carrier.* Neither the Carmack amendment to the Interstate Commerce act nor section 22 of the Federal Bills of Lading act affects the common law liability of a connecting carrier, as said statutes change the common law liability of the initial carrier, only, and in a suit against a connecting carrier for shortage in the quantity of goods received by the purchaser or assignee of the bills of lading the connecting carrier is not estopped to deny that it received the quantity specified in the bills of lading.

3. SAME—*liability of connecting carrier is only for its own negligence or default.* The liability of a connecting carrier to the consignee or to the assignee of a bill of lading is only for its own negligence or omission in the handling of the shipment.

APPEAL from the Second Division of the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. GEORGE A. CURRAN, Judge, presiding.

JOHN GIBSON HALE, for appellant.

328—23

MOSES, KENNEDY, STEIN & BACHRACH, (HERBERT H. KENNEDY, of counsel,) for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellee, the Alton Iron and Metal Company, began suit in the municipal court of Chicago against appellant, the Wabash Railway Company, to recover shortages upon two car-loads of freight. There was a trial before the court without a jury, judgment was rendered against appellant for $151.63, which has been affirmed by the Appellate Court for the First District, and a further appeal has been prosecuted to this court on a certificate of importance.

On October 4, 1922, two car-loads of scrap iron were shipped from Rayville, Louisiana, by the Mengel Company, consigned to the shipper at Chicago. Two uniform domestic bills of lading, the forms of which had been approved by the Interstate Commerce Commission, were issued to the shipper by the initial carrier. From East St. Louis the shipments were carried to Chicago over appellant's road, where they arrived about November 2, 1922. The consignee was notified of the arrival, but the loaded cars remained on appellant's tracks until about November 24, when the bills of lading were assigned to appellee, who paid the carrier charges, had the cars switched to the tracks of the Chicago, Burlington and Quincy Railroad Company, and they were unloaded on November 27 in the yards of appellee, whereupon appellee claimed a shortage of 9930 pounds on one car and 6020 pounds on the other car, valued at $19 per ton.

The evidence on behalf of appellee consisted of the two bills of lading, together with proof that appellee purchased the shipments in Chicago upon the basis of the weights stated in the bills of lading; that the bills of lading were assigned to appellee, who paid appellant the freight charges over the entire route of the shipments based on the weights

as stated in the bills of lading; that there was a shortage, and the value thereof. The evidence on behalf of appellant was that it received the two cars from a connecting carrier at East St. Louis, transported them safely and without loss to Chicago, where they were delivered to appellee in the same condition in which they were received by appellant.

The contention of appellee is that appellant was an insurer of the goods and is estopped from denying that it received the quantity of iron specified in the bills of lading and is therefore liable for the shortages. Appellant contends that the common law liability of a terminal carrier in an interstate shipment is for its own negligence, only, and that such liability was not changed or affected by the Carmack amendment to the Interstate Commerce act; that there is no proof that the loss was due to any negligence on appellant's part, but, on the contrary, the proof shows the loss was not caused by the negligence of appellant. The holding of the Appellate Court sustains the contention of appellee.

These were interstate shipments, and the rights and liabilities of the parties are governed by Federal statutes and the decisions of Federal courts in so far as such statutes and decisions are applicable to the facts in evidence. (*Adams Express Co.* v. *Croninger,* 226 U. S. 491; *Southern Railway Co.* v. *Prescott,* 240 id. 632.) At common law a connecting or terminal carrier was liable only ·for loss or damage to property in its custody resulting from its own acts or omissions. (*Pennington* v. *Grand Trunk Western Railway Co.* 277 Ill. 39.) Prior to the passage of the Carmack amendment the Federal rule was that each carrier in an interstate shipment, in the absence of a special contract to the contrary, was only bound to safely carry the goods over its own line and safely deliver them to the succeeding carrier. (*Railroad Co.* v. *Manufacturing Co.* 16 Wall. 318; *Myrick* v. *Michigan Central Railroad*

*Co.* 107 U. S. 102.) The Federal rule, however, was changed by the Carmack amendment, which is found in sections 8604*a* and 8604*aa* of the United States Comp. Statutes of 1918. Section 8604*a* in substance provides that any railroad company subject to the provisions of the act, receiving property for transportation between the States, shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for the full actual loss, damage or injury to such property caused by it, or by any common carrier to which such property may be delivered or over whose lines such property may pass, when transported on a through bill of lading, and no contract or other limitation of any character whatsoever shall exempt such common carrier from the liability imposed, provided, however, that nothing in the section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing laws. Section 8604*aa* gives the initial carrier the right to recover from the connecting carrier any damage which the initial carrier is required to pay by reason of any loss occasioned by the connecting carrier.

The provisions of the Carmack amendment were before the Supreme Court of the United States in *Georgia, Florida and Alabama Railway Co.* v. *Blish Milling Co.* 241 U. S. 190, and the decision of the trial court in this case, and of the Appellate Court, is based largely upon the holding in the *Blish case.* Some of the language used in the *Blish case* was explained and construed in *Oregon-Washington Railroad and Navigation Co.* v. *McGinn,* 258 U. S. 409. The court held in these two cases that the Carmack amendment modified the common law liability of the initial carrier, only, and rendered that carrier liable not only for damage to the property while in the possession of the initial carrier, but also rendered the initial carrier liable for damage occasioned by any connecting carrier; that the connecting carrier was not relieved from liability by the amend-

ment for negligence or loss occasioned upon the line of the connecting carrier and due to the negligence of the connecting carrier; that the bill of lading issued by the initial carrier governed the entire transaction and fixed the obligations of all participating carriers to the extent that the terms of the bill of lading were applicable and valid; that the amendment did not alter the common law liability of other carriers except the initial carrier, and that the express provisions of the statute made that exception; that the terminal carrier was liable for failure to make delivery just as the initial carrier would have been if it had been sued for mis-delivery, for the reason that by the terms of the bill of lading each was under obligation to make final delivery. Other Federal cases to the same effect are, *Atlantic Coast Line Railroad Co.* v. *Riverside Mills,* 219 U. S. 186; *Galveston, Harrisburg and San Antonio Railway Co.* v. *Wallace,* 223 id. 481; *Adams Express Co.* v. *Croninger, supra; Norfolk and Western Railway Co.* v. *Dixie Tobacco Co.* 228 U. S. 593; *Atchison, Topeka and Santa Fe Railway Co.* v. *Robinson,* 233 id. 173.

The rule announced by the Federal courts in this respect was recognized by this court in *Pennington* v. *Grand Trunk Western Railway Co. supra.* On page 42 this court said: "It is true that the Carmack amendment makes the initial carrier liable to the lawful holder of the bill of lading for any loss, damage or injury to property caused by it, or by any common carrier, railroad or transportation company to which such property may be delivered or over whose lines such property may pass. It is also true that under that amendment no other connecting carrier is made liable for such loss or injury caused by any other carrier connected with the shipment or transportation. However, every carrier connected with an interstate shipment is liable for damage or loss to the property so received or transported, caused by its own negligence. The Carmack amendment expressly reserves to the shipper such a right of action by

this proviso: *'Provided further,* that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law.' Where the suit is against a connecting carrier and not against the initial carrier of an interstate shipment it is incumbent upon the plaintiff to allege and prove that the loss and damage to his shipment were caused by the negligence of the defendant according to the law in existence prior to the enactment of the Carmack amendment." On page 44 it was said: "The bill of lading issued by the initial carrier is to be considered, under the provisions of the Carmack amendment, as a bill of lading of the connecting carrier, and therefore binding in all of its provisions that are valid and applicable to that suit."

Appellee insists that under section 8604*kk* of the United States Comp. Statutes of 1918, which is section 22 of the Federal Bills of Lading act, appellant was an insurer of the shipments and liable for the shortages. That section provides, in substance, that if a bill of lading has been issued by a carrier for transportation in commerce among the several States, the carrier shall be liable to the owner of the goods covered by a straight bill of lading, subject to the existing right of stoppage in transit, or to the holder of an order bill who has given value in good faith, relying upon the description therein of the goods, for damages caused by the non-receipt by the carrier of all or any part of the goods or their failure to correspond with the description thereof in the bill at the time of its issue. This section only changes the common law liability of the initial carrier which issued the bill of lading. By its terms it does not apply to a connecting or terminal carrier, and their liability remains the same as it was prior to the passage of this section. *American Hide Co.* v. *Southern Railway Co.* 310 Ill. 524, does not announce a contrary rule. That was a suit on an intrastate shipment against the initial carrier based on section 23 of chapter 27 of the State

statute of 1911, commonly known as the Uniform Bills of Lading act. This court held that prior to that act a carrier who issued a bill of lading acknowledging receipt of goods could defend against an action by showing that the goods had not been received by it but that this statute deprived the carrier of that defense. It was also held that section 23 of the State statute was substantially the same as the corresponding section of the Federal statute.

In this case the trial court and the Appellate Court were in error in holding that appellant was an insurer of the goods and estopped from denying that it received the quantity of iron specified in the bills of lading. The only liability of the appellant as a connecting carrier was for its own negligence or default. The evidence on behalf of appellant shows that these shipments were delivered by appellant in the same condition in which it received them. There is an entire absence of any evidence showing, or even tending to show, any negligence or default on behalf of appellant in the handling of the shipments. For this reason the court should have entered a judgment in favor of appellant. Propositions of law were submitted by appellant which correctly state its liability. These propositions were not held, and this was error.

The judgment of the municipal court and of the Appellate Court will be reversed and the cause will be remanded to the municipal court.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*